IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALLAN LESLIE SINANAN, JR.,        )
                                       )
           Plaintiff,           )
                                       )
   vs                         )      Civil Action No. 1:24-0192
                                       )
                                     )      Magistrate Judge Dodge
CORRECTIONS OFFICER QUINN,    )
                                       )
          Defendant.       )

**MEMORANDUM OPINION**

Plaintiff Allan Leslie Sinanan, Jr. ("Sinanan"), a prisoner who is incarcerated by the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Albion, Pennsylvania ("SCI Albion"), brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 against Corrections Officer Quinn. The Complaint alleges that an attack on Sinanan by six inmates on September 28, 2022 was facilitated by Defendant Quinn in violation of Sinanan's rights under the Eighth Amendment to the United States Constitution.

Pending before the Court is Sinanan's "Motion for Sanctions and Entry of Judgment, Due to Failure to Preserve Electronically Stored Information and Tangible Items and Other Non-Electronic Information Pursuant to Federal Rules of Civil Procedure 37(e)" (ECF No. 46). For the reasons discussed below, the motion will be denied.

## I.   **Procedural History**

Sinanan's Complaint was docketed on July 19, 2024 (ECF No. 5). It named both Quinn and SCI Albion as Defendants. On December 23, 2024, Defendants filed a partial motion to dismiss (ECF No. 19), seeking the dismissal of SCI Albion as well as the claim against Quinn in his official capacity. Judge Baxter entered an order on July 1, 2025, granting the motion (ECF No.

32). As a result, Quinn is the only remaining defendant and the Eighth Amendment claims are asserted against him only in his individual capacity.

On October 24, 2025, Plaintiff filed the pending motion (ECF No. 46), which has been fully briefed (ECF No. 61). A hearing was held on March 10, 2026 during which both parties had an opportunity to present evidence and argument in support of their respective positions.[1]

## II.    Facts Relevant to Pending Motion

Sinanan alleges that on September 28, 2022, while incarcerated at SCI Albion, he was attacked by six inmates after a dispute arose about extra trays in inmate cells. According to Sinanan, Quinn, the block officer on the CA-Unit, facilitated this attack by unlocking the door to his cell. Sinanan alleges that a video that recorded the incident substantiates these events and a hearing officer dismissed a misconduct that had been lodged against him because the video showed three inmates entering his cell. (Compl. Memo. at 2 (ECF No. 5-1); Ex. H (ECF No. 5-9).)

Quinn allegedly refused to arrange for Plaintiff to receive medical treatment after the attack, claiming that there was "nothing wrong with you I'm not getting medical involved." (Compl. Memo. at 4.) Sinanan was ultimately seen by medical personnel and transported to an outside hospital for treatment. (Compl. Memo at 5.) When he returned to the prison later that day, he was issued a misconduct (D-640117) for fighting and placed in the Restricted Housing Unit ("RHU") pending a hearing. (ECF No. 72 Ex. A at 2.)

Ryan Szelewski, a hearing examiner at SCI Albion, was called as a witness by Defendant and testified during the March 10, 2026 hearing. He stated that on September 30, 2022, he held a hearing regarding Sinanan's misconduct charge for fighting on September 28, 2022. During that

---

[1] At the hearing, the parties also presented argument concerning Sinanan's Motion for Leave to File a Second Amended Complaint (ECF No. 68). That motion will be addressed in a separate order.

misconduct hearing, he viewed a video that depicted some events related to the attack. Sinanan was not permitted to view the video during the hearing because it is against prison policy.[2] Mr. Szelewski testified that he has no independent recollection the hearing or what the video depicted, and he does not retain videos after a hearing. At the conclusion of the hearing, Mr. Szelewski made the following written findings: "Inmate was attacked in his cell. [Hearing Examiner] viewed video. Video shows the 3 [inmates] enter the back door the place where Sinanan lives. Dismissed with prejudice." (ECF No. 72 Ex. A at 1.) He testified that he assumes that if the video had depicted additional events of relevance, he would have recorded them in his findings.

Defendant's counsel acknowledged during the March 10, 2026 hearing that he does not dispute Szelewski's conclusion that the attack occurred.

According to Mr. Szelewski, the only camera in the area of Sinanan's dorm area that was in use at the time was a pan tilt zoom camera. The dorm in which Sinanan was housed is shaped like a triangle, and the camera continuously pans 360 degrees around that triangle.

Todd Stafford, a security lieutenant at SCI Albion, was also called as a witness by Defendant. He explained that the CA-Unit has 64 cells. A dorm holds eight inmates. There are no cameras in the dorm or in the cell itself. A camera was located on the ceiling of the housing unit and rotated 360 degrees. It only captures the entrance to the dorms, not to cells.

According to Lt. Stafford, video footage is retained for 30 days and then overwritten. As confirmed by counsel for Quinn, there is no written policy at SCI Albion regarding the retention of electronically stored information, including video recordings. (ECF No. 74.)

On September 29, 2022, corrections officers confiscated two boxes of Sinanan's legal materials. Sinanan told them he had an exemption to keep these materials but was advised that his

---

[2] Sinanan testified that he has never seen the video.

exemption was outdated. He was issued another misconduct (D-828354) for possession of the legal materials. (ECF No. 74 Ex. C at 10.) Sinanan claims that the Hearing Examiner dismissed misconduct D-828354 relating to the boxes of legal materials and allowed him to keep them.[3]

On October 11, 2022, Sinanan filed a grievance (1002600) relating to the boxes of legal materials that corrections officers removed from his cell. In this grievance, he wrote, "Please preserve video footage from 9/28/22 CA-Unit, due to injury." (ECF No. 74 Ex. C at 3.) The grievance was denied on November 10, 2022. (ECF No. 74 Ex. C at 1.)[4]

On December 1, 2022, Sinanan filed a second grievance (1009667) regarding his claim that he did not receive medical treatment following the September 28, 2022 attack. He did not request preservation of any video footage in this grievance. On February 6, 2023, the grievance was denied. Sinanan filed an appeal with the Facility Manager on February 15, 2023, which was denied on March 1, 2023. On March 15, 2023, he filed a final appeal with the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), which was denied on April 1, 2023. (ECF No. 72 Ex. B at 1-2, 5-10.)

During discovery in this case, Quinn's notice of discovery production to Sinanan (ECF 43) states, in relevant part: "Security at SCI Albion has confirmed that NO incident report was authored, and no video was retained, pertaining to the incident on 9/28/2022." (ECF No. 43 at 1.)

---

[3] However, the Disciplinary Hearing Report, which was entered into the record after the hearing on March 10, 2026, states that Sinanan pleaded guilty to possessing contraband consisting of two boxes of legal materials, four pairs of eyeglasses and six eyeglass cases. (ECF No. 74 Ex. C at 11.) This matter is not relevant to resolution of the pending motion.

[4] At the hearing, Sinanan testified that the prison never responded to his grievance because the legal materials were returned to him. In fact, the response, dated November 10, 2022, states that "Inmate Sinanan's legal material has been returned."

4

### III.    Standard of Review

"Spoliation occurs when evidence is destroyed or altered, or when a party fails to preserve evidence in instances where litigation is pending or reasonably foreseeable." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir.2012) (citation omitted). "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Id.*

The authority to issue sanctions for spoliation comes from both the Federal Rules of Civil Procedure and the Court's inherent authority to sanction litigants for misconduct. *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004). Whether to impose sanctions is within the Court's sound discretion. *Bozic v. City of Washington, Pa.*, 912 F. Supp. 2d 257, 266 (W.D. Pa. 2012).

Rule 37(e) provides the exclusive remedy for spoliation of ESI. *Bistrian v. Levi*, 448 F. Supp. 3d 454, 465 (E.D. Pa. 2020). As the court in *Bistrian* summarized:

> The advisory committee's notes to the 2015 amendment further explain the elements of spoliation of ESI. First, the spoliating party was under a duty to preserve when the loss occurred. Second, the lost ESI was within the scope of the duty to preserve. Third, "the information was lost because the party failed to take reasonable steps to preserve" it. Fourth and finally, because ESI "often exists in multiple locations," spoliation occurs only where the information is truly lost and not recoverable elsewhere.

*Id.* (footnotes omitted).

"Upon finding that spoliation occurred, the court must then determine what sanction(s) to impose" based on Rule 37(e)(1) and Rule 37(e)(2). *Manning v. Safelite Fulfillment, Inc.*, 2021 WL 3557582, at *5 (D.N.J. Apr. 29, 2021). "A court may resort to (e)(1) measures only upon finding prejudice to another party from loss of the information…. Subdivision (e)(2), on the other hand,

does not include a requirement that the court find prejudice to the party deprived of the information…." *Id.*; *compare* 2015 Advisory Committee Notes to Fed. R. Civ. P. 37(e)(2) ('[A] court may resort to (e)(1) measures only 'upon finding prejudice to another party from loss of the information.' An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation.") *with* 2015 Advisory Committee Notes to Fed. R. Civ. P. 37(e)(2) ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice").

Finally, in determining which sanction to impose, the Third Circuit's three-factor test guides district courts. *Bistrian*, 448 F. Supp. 3d at 465 n.14 (citing *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019)). The "three factors district courts must consider when contemplating Rule 37 sanctions [are]: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *GN Netcom*, 930 F.3d at 82.

## IV.     Discussion

Sinanan contends that Quinn's failure to preserve the video of the incident was intentional and prejudices his ability to present his claims. In turn, Quinn argues that the prison was not required to retain the video because Sinanan failed to take proper steps to request that it be

preserved. Quinn also contends that even if the failure to preserve the video constitutes spoliation, Sinanan has not demonstrated prejudice or bad faith that would support a sanction for spoliation.

A.  Duty to Preserve

During the March 10 hearing, the parties disputed whether SCI Albion was required to retain the video pursuant to DOC policy and whether Sinanan properly requested that it be preserved. Sinanan stated that he verbally asked a sergeant after the incident to retain the video and that he also made a written request in his first grievance for the video to be preserved. He also suggests that an attack by multiple inmates resulting in injuries requiring medical care should trigger a requirement to retain the video.[5] He also notes that DOC policy DC-ADM 001 requires the retention of a video when an allegation of abuse by a staff member is made.[6]

According to Quinn, video is ordinarily retained for thirty days before it is overwritten unless an incident involves the use of force by a staff member or an inmate asks that it be preserved. As to the use of force, Quinn contends that preservation was not required because this incident did not involve a staff member. He also takes the position that Sinanan's request that the video be preserved was untimely and did not follow prison policy. Quinn argues that because Sinanan's first grievance related to the confiscation of his boxes of legal materials, not the assault, and because prison policy allows only one subject to be raised in a grievance, his request for retaining the video of the attack in this grievance was appropriately disregarded. And while his second grievance concerned his claim of lack of medical treatment due to the assault, it did not request

---

[5] At the hearing, Grievance Coordinator Michelle Thart testified that she did not know whether an inmate's transfer to an outside hospital would trigger a requirement to preserve the video. Security Lieutenant Todd Stafford testified that transfer to an outside hospital would generally result in the issuance of an Extraordinary Occurrence Report, which did not occur in this case.

[6] Notably, however, the grievance do not reference Quinn and their focus is on the lack of medical care, not Quinn's possible role in the attack.

the retention of the video recordings. Moreover, this grievance, which was not filed until December 1, 2022, was not submitted within 14 days of the incident as DOC policy requires.

Quinn's arguments miss the mark. First, as he acknowledges, there is no written policy about retention of electronically stored information, including video recordings. Further, he does not cite to any policy that requires an inmate to request retention of video in a certain way or the process by which to do so. As another district court recently observed when presented with a similar argument: "Defendant's counsel makes much about the failure of Tolbert to specifically request video preservation in his grievance. However, there is no DOC policy requiring an inmate to request evidence preservation in a grievance or even a policy explaining to an inmate how to request that evidence be preserved." *Tolbert v. Baldwin*, 2025 WL 1361284, at \*5 n.12 (E.D. Pa. May 9, 2025). Moreover, as noted in *Tolbert*, "the fact that the video had been overwritten pursuant to DOC policy by the time of the discovery request does not negate control." 2025 WL 1361284, at \*4.

Simply put, Sinanan cannot be faulted for failing to comply with a policy that does not exist. And it is uncontroverted that within two weeks of the September 28, 2022 incident, well within the thirty-day window for preservation, Sinanan requested preservation of the video evidence that Quinn admits depicted Sinanan's assault by three inmates. Thus, Quinn's arguments about Sinanan's failure to follow policy are unpersuasive.

Indeed, the seminal issue here is not the existence, or lack thereof, of policies or procedures for requesting preservation of video evidence, but whether SCI Albion had a duty to preserve video because litigation about the incident was reasonably foreseeable. Here, the Court finds that it had such a duty. It was known that Sinanan was attacked and sustained injuries. He requested the preservation of related video. These actions also put the DOC on notice that litigation was

reasonably foreseeable. *See Bistrian*, 448 F. Supp. 3d at 469 ("[C]ourts have held that in the correctional context, a duty to preserve may attach when an inmate is in a fight or when an inmate files grievances about [such an] incident.")

Thus, SCI Albion had a duty to preserve it, and Quinn does not argue that this duty should not be imputed to him. As discussed in *Tolbert,* imputing this duty is not unfair as Quinn is represented by the Attorney General's office and presumably would be indemnified if he was found liable even though he is only sued in his individual capacity. *See also Neal v. Powell*, 2024 WL 3466800, at *4-5 (D.N.J. July 19, 2024) (corrections officers sued for assaulting inmate and causing damage to his teeth had imputed control over lost x-rays and an imputed duty to preserve them.) "[A] state correctional department's failure to preserve evidence may be imputed to individual officer defendants in order to avoid unfair prejudice to inmate litigants." *Stanbro v. Westchester Cnty. Health Care Corp.*, 2021 WL 3863396, at *6 (S.D.N.Y. Aug. 27, 2021) (citations omitted). A rule to the contrary "would lead to the absurd result that a state-run correctional facility could wrongly destroy any piece of evidence in its control with near-zero risk of consequence in prisoner suits, since [the prison] cannot be sued for damages in Section 1983 cases, nor can it be held vicariously liable for the torts of its employees." *Id.* (citations omitted).

Moreover, the video is relevant to Sinanan's case. *See Peronace v. City of Phila.*, 2024 WL 1660543, at *5 (E.D. Pa. Apr. 16, 2024) (finding that although the preservation request pertained to video footage of an assault inside the plaintiff's cell, a "reasonable prison employee receiving such a request would recognize that footage of individuals entering [the plaintiff's] cell during the relevant time period falls within the scope of [the] request, even if there was no footage from the inside of the cell"). Sinanan's case involves his claim that he was attacked by multiple inmates and he asserts that the video would support this aspect of the claim.

9

In addition, there was actual withholding of potentially relevant evidence given that the video was not retained. Under the circumstances of this case, the DOC had a duty to preserve the video. Quinn argues that this was merely a "fight among inmates," but courts have held that "an inmate-on-inmate attack in prison . . . commonly leads to civil litigation." *Bistrian*, 448 F. Supp. 3d at 471. It is undisputed that Sinanan was attacked by other inmates and sustained injuries serious enough that he had to be transported to an outside hospital for treatment.

Finally, Sinanan credibly testified at the hearing before this Court that he verbally asked a sergeant on the date of the incident to preserve video from 11:00 a.m. to 12:30 for future litigation purposes.[7] Quinn provided no evidence or other basis for rejecting this testimony. Further, it is undisputed that Sinanan wrote in a grievance two weeks after the incident that he wanted the video to be preserved. He also filed a grievance in which he requested monetary damages, which are not available through the prison's grievance system. This action also put the DOC on notice that litigation was reasonably foreseeable. *See Bistrian*, 448 F. Supp. 3d at 469 ("[C]ourts have held that in the correctional context, a duty to preserve may attach when an inmate is in a fight or when an inmate files grievances about [such an] incident.")

Thus, the DOC had a duty to preserve the video and that duty is properly imputed to Quinn. *Tolbert*, 2025 WL 1361284, at *6.

B. Sanctions are not Warranted

At the same time, however, Sinanan has not established that he is entitled to sanctions which, as noted above, are a matter within the Court's discretion. Notably, Quinn does not dispute that an assault occurred, so not having video evidence of the assault itself does not cause any undue

---

[7] According to the misconduct report, the incident happened at 11:47 a.m. (ECF No. 72 Ex. A at 2.)

prejudice to Sinanan's ability to present his claim. While Sinanan has not seen the video, the hearing examiner did review it and provided some evidence of its content. While his contemporaneous summary of what the video depicted is not necessarily exhaustive, it states that three inmates entered the back door where Sinanan was housed. It makes no mention of Quinn.

Sinanan alleges that Quinn, the block officer on the CA-Unit, facilitated this attack. In his Complaint, Sinanan alleges that, after he entered the dorm on the day of the attack, he closed the door, which automatically locks it. He asserts that prior to the attack, Quinn spoke with the inmates who assaulted him and then speculates that Quinn must have unlocked his door immediately prior to the attack, either by using a key or doing so at a station by pressing a button, although he does not explicitly allege that the video would have corroborated this fact. (Compl. Memo at 2, 4.)

Indeed, at the hearing, Sinanan testified that the video would have shown Quinn speaking to the inmates who assaulted him before the attack. Based on this testimony, there is no basis for concluding that the failure to preserve the video prejudiced Sinanan's ability to pursue his claim against Quinn. As Mr. Szelewski testified, the video cameras do not capture audio. As a result, even if there were video that showed Quinn speaking to inmates, there would be no evidence of what was said. And if, as he alleges, Sinanan witnessed Quinn talking to inmates before the attack, he can testify about what he saw. Thus, the lack of video evidence has not resulted in any prejudice to Sinanan's claim that Quinn instigated the attack by talking to the inmates who later attacked him.

In short, the lack of video evidence is not prejudicial to Sinanan's ability to present his case. If this case goes to trial, he can offer testimony and other evidence to support his belief that Quinn instigated the attack on him. If Quinn presents evidence to the contrary, it will be up to the fact finder to evaluate their respective positions at trial. Thus, the failure to preserve the video does

11

not warrant imposing sanctions against Quinn.

Nor is there evidence that the DOC acted in bad faith in this case. In determining bad faith, courts look to circumstantial evidence to determine intent, including "the timing of the destruction, whether there was selective preservation, and what preservation policies the party had in place." *Donofrio v. Ikea US Retail, LLC*, 2024 WL 1998094, at \*28 (E.D. Pa. May 6, 2024). In this case, the video appears to have been destroyed in accordance with the DOC's regular procedures (the thirty-day overwriting) and there was no selective preservation, as occurred in *Tolbert*. *See Bistrian*, 448 F. Supp. 3d at 475 ("automatic overwriting is generally less culpable than affirmative deletion, which in turn is less culpable than taking additional steps to erase backup copies.")

Because there is no evidence of bad faith or prejudice, the Court declines to impose sanctions in this case.

## V.    Conclusion

For these reasons, Sinanan's motion (ECF No. 46) will be denied. An appropriate order follows.

Dated: March 26, 2026                          /s/Patricia L. Dodge
                                               PATRICIA L. DODGE
                                               United States Magistrate Judge

cc:    ALLAN LESLIE SINANAN, JR.
       QA-9625
       SCI ALBION
       10745 Route 18
       Albion, PA 16475-0001

12